`William Cafaro, Esq.*
*Partner*
ADMITTED IN NY, CA, MD & TX
Email: bcafaro@cafaroesq.com

*Amit Kumar, Esq.*
*Managing Attorney*
ADMITTED IN NY & NJ
Email: akumar@cafaroesq.com

*Andrew S. Buzin, Esq.*
*Of Counsel*
ADMITTED IN NY, FL & DC



LAW OFFICES OF
WILLIAM CAFARO

108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
*www.cafaroesq.com*

*Louis M. Leon, Esq.*
*Associate*
ADMITTED IN NY
Email: lleon@cafaroesq.com

*Matthew S. Blum, Esq.*
*Of Counsel*
ADMITTED IN NY
Email: mblum@cafaroesq.com

August 24, 2021

*__Via Electronic Case Filing__*
Hon. George B. Daniels U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re: Jose Olivares v. Wardrop Foods, Inc., et al
        Case No.: 19-cv-10568 (GBD)

Your Honor:

We represent Jose Olivares ("Plaintiff") in the above-referenced case brought pursuant to, *inter alia*, the Fair Labor Standards Act ("FLSA") and New York Labor Law "NYLL"), against Wardrop Foods, Inc. d/b/a Paul's Da Burger Joint and Matthew Wardrop (collectively as "Defendants") (Defendants, with Plaintiff, as the "Parties"). We submit this letter, on behalf of all Parties, consistent with *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the Parties' settlement agreement, a copy of which is attached hereto as **Exhibit 1.** As explained further below, the Parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

### I. Preliminary Statement

The Plaintiff filed this action seeking, damages for minimum wage and unpaid overtime wages under the FLSA and NYLL, spread of hours claims under NYLL, and record keeping violations under the NYLL. Plaintiff alleges that Defendants owned and operated a restaurant which employed Plaintiff.

Plaintiff claims that Defendants failed to pay him minimum wage and overtime premiums. Attached as **Exhibit 2** is a thorough damage calculation as to Plaintiff's claims. According to these calculations, Plaintiff is entitled to $59,526.00 in actual damages and $59,526.00 in liquidated damages. These calculations represent the best-case scenario for Plaintiff's FLSA claims, the only claims for which a *Cheeks* Motion and Court approval is actually required.

Defendants vehemently deny all of Plaintiff's allegations, and do not admit to any wrongdoing or violation of the law for any period of time. Defendants state that at all times relevant to this lawsuit they paid Plaintiff correctly under the law. Furthermore, they claim that Plaintiff's alleged work hours are greatly exaggerated and that he was paid properly.

## II. The Settlement Reached Between the Parties

After the filing the case and going to mediation, the parties were able to arrive at a settlement of **$70,000.** Although there was delay in actually executing the settlement agreement, a mutually-agreeable agreement was ultimately executed. Defendants' counsel have represented to Plaintiff's counsel that the $70,000 has been kept in escrow since there was a settlement in principle and that it will be promptly paid pursuant to the terms of the agreement following Court approval.

With respect to the release language in the Agreement, Plaintiffs have executed a release of claims related to their compensation by Defendants, and the Agreement contains no confidentiality or non-disparagement provisions. *See, Barbecho v. M.A. Angeliades, Inc.*, 2017 U.S. Dist. LEXIS 48595, at *6 (S.D.N.Y. Mar. 30, 2017) (rejecting FLSA settlement containing a "general release that r[an] only in favor of defendants"); *Thallapaka v. Sheridan Hotel Assocs. LLC*, No. 15cv1321, 2015 U.S. Dist. LEXIS 117179, at *2-3 (S.D.N.Y. Aug. 17, 2015) ("[T]he overwhelming majority of courts reject the proposition that FLSA settlements can be confidential."); *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-cv-8187 (AJN), 2015 U.S. Dist. LEXIS 162243, at *8-9 (S.D.N.Y. Dec. 3, 2015) (rejecting a provision prohibiting plaintiffs from "mak[ing] disparaging or detrimental comments, statements or the like about Defendants").

Plaintiff's counsel strongly believe that the **$70,000.00** settlement is an optimal result within the circumstances. Defendants have alleged serious financial problems since the inception of this lawsuit. Worsening the situation, Defendants have been out of business for a long time and adversely impacted by the COVID-19 pandemic.

While we were believed that we would have been able to prevail at a higher figure after running up a higher lodestar amount, this would have entailed significant risk and would have been irresponsible. As this is our client's case, his strong, categorical desire to settle this action should certainly govern. Plaintiff undoubtedly desired to resolve this matter, as did Defendants. Furthermore, each party is represented by experienced counsel. Our practice focuses on employment law and we handle a significant volume of FLSA cases.

## III. The Court Should Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a

settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the Plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, *supra* at 335.

### *Plaintiff's Range of Possible Recovery*

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). Here, while Plaintiff alleges entitlement to damages, Defendants aver that he was properly paid at all times and therefore is not entitled to any damages.

The settlement represents approximately 36% of Plaintiff's actual damages in this case. In light of the totality of the circumstances (including but not limited to Defendants' undeniable financial issues and the parties' strong desire to settle for this amount), the settlement represents a reasonable compromise of the *bona fide* dispute in this matter. The settlement eliminates risks and ensures the Plaintiff will receive a meaningful amount of wages due even after paying the legal fee.

### *Whether the Settlement Agreement is the Product of Arm's-Length Bargaining*

A "presumption of fairness, adequacy and reasonableness may attach to a settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The Parties engaged in discovery and participated in arm's length settlement discussions in order to arrive at this settlement. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

### *Possibility of Fraud or Collusion*

There is no possibility that this settlement was precipitated by reason of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. Moreover, because the Plaintiff

left the Defendants' employ prior to the commencement of the action, there has not been, nor could there have been, any undue influence exercised upon Plaintiff in the workplace which could have precipitated this settlement.

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. At all times, negotiations took place between experienced counsel and were at arm's-length. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

IV. **Plaintiffs' Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount, Plus Expenses**

Counsel is entitled to reasonable attorneys' fees to compensate for work in recovering unpaid overtime wages and money due for wage statements and wage notice violations. Under the retainer agreement, Plaintiff's counsel would be entitled to a one-third fee on the gross recovery of $70,000.00, which equates to approximately $23,333.33, plus the out-of-pocket costs and disbursements, which are $518.00,[1] consisting of the following:

- Filing fee:                          $ 400.00
- Process server charges:              $ 118.00

Plaintiffs' counsel's total fees and costs total $23,851.33. Thus. Plaintiff's counsel's total requested fees and costs is **$23,851.33.**

Although the undersigned fully recognizes the Court's prerogative to evaluate the attorneys' fee arrangement in a FLSA matter, not all courts in this circuit have read *Cheeks* to require this assessment. *See Gutierrez v. 352 East 86th St. Rest. Inc.*, 2016 U.S. Dist. LEXIS 23967, *3 -4 n. 1 (S.D.N.Y Feb. 19, 2016) ("I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counselor to alter the freedom of contract between a client and his attorney"). Additionally, to the extent *Cheeks* did mention attorney's fees, it was in the context of an abusive attorney's fee that went as high as 43.6%, in contrast to the standard one third which is requested here. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d at 206. Nonetheless, in support of this fee request, the undersigned submits as follows:

As the Court will see, the undersigned expended at least 27.7 hours. *See* billing records attached as **Exhibit 3**. We are requesting a billing rate of $225.00 for myself. *See Peralta v. Regent Catering, Inc.*, No. 11-cv-06993 (DLI) (JO), Text-Only Order (E.D.N.Y. June 5, 2018) (awarding an hourly rate of $225.00*); Colon v.45-53 West 110 Street Housing Development Fund Corporation*, No 15-cv-03382 (AJP) (S.D.N.Y. November 2, 2016). "To determine the quality of representation, courts review, among other things, the recovery obtained, and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31

---

[1] The Court has not requested any expense records. If they are needed, Plaintiff's counsel will gladly furnish them.

(S.D.N.Y Jan. 31, 2007) (*citing In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

I have been employed as an associate with my office since July 2017. I received the degree of Juris Doctor from Maurice A Deane School of Law at Hofstra University in 2014 and am admitted to practice in the state courts of New York as well as the Southern and Eastern Districts of New York. I am fluent in both English and Spanish, which assisted in this matter as my client is a Spanish speaker. Prior to working at the Law Offices of William Cafaro, I was an associate at Frank & Associates, P.C. and later at Borrelli & Associates, P.L.L.C. where I worked almost exclusively on collective and class action wage and hour litigation.

At the requested rates, Plaintiff's counsel's total lodestar is $6,232.50. Even where the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2015 U.S. Dist. LEXIS 98691 (S.D.N.Y. July 7, 2015). Moreover, a multiplier is used in order to compensate Plaintiffs' counsel for time that is required administering the settlement. *See Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *19 (E.D.N.Y. Feb. 18, 2011). Courts have awarded multipliers up to **eight (8)** times the lodestar and in some cases, they have awarded multipliers that are even higher. *See*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (collecting cases); *see also*, *Riveras, et al v. Bilboa Rest. Corp., et al.*, E.D.N.Y. Case. No. 17-cv-04430, DE 74 (Memorandum and Order approving a lodestar multiplier of 6.7). Here, the multiplier is approximately 3.74, well within the acceptable range.

Lastly, the Court should review the public policy considerations concerning the manner in which attorneys' fees are reviewed. Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing would have been to build up attorneys' fees. This would forestall a resolution that could have been achieved earlier. While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is made, other attorneys who do wage-and-hour litigation very well might. Reducing attorney's fees in single plaintiff FLSA cases below one third would disincentivize early resolution of these cases. As FLSA cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy.

V. **Conclusion**

For the reasons set forth above the Plaintiff requests that the Court approve the settlement as reflected in the Agreement. Plaintiff's counsel further requests that the Court approve the attorney's fee award and requested costs reflected in the Agreement as fair and reasonable.

Respectfully submitted,
/s/ Louis M. Leon
By Louis M. Leon (LL 2057)
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10018

(212) 583-7400
LLeon@CafaroEsq.com